# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SANDRA FELIX, as Personal Representative
of the estate of THOMAS FELIX, JR.,

      Plaintiff,

v.     No. CIV 04-0374 JB/RLP

BERNALILLO COUNTY, a local public body
of the State of New Mexico, CITY OF ALBUQUERQUE,
a local public body of the State of New Mexico,
BERNALILLO COUNTY SHERIFF'S DEPARTMENT,
and CORRECTIONAL MEDICAL SERVICES, INC.,
a Missouri Corporation,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants Bernalillo County and the City of Albuquerque's Motion for Summary Judgment for Failing to Exhaust Administrative Remedies Required Under the Prison Litigation Reform Act, filed March 28, 2005 (Doc. 49). The primary issue is whether the PLRA's exhaustion requirement applies to deceased inmates or to their representatives. Because this Court concludes that a deceased person or a non-prisoner representative is not a "prisoner confined in any jail, prison, or other correctional facility . . . ," the Court will deny the motion.

## FACTUAL BACKGROUND

On August 9, 2002, Thomas Felix, Jr. learned that police officers were looking for him. See Plaintiff's Amended Complaint for Wrongful Death in Violation of Federal and State Law ¶¶ 15, 16, and 20, at 3, filed June 22, 2004 (Doc. 10). Felix met his friend, Jose Ramirez, at the Fuddrucker's

restaurant in Albuquerque, New Mexico.  See id. ¶ 20, at 3.  Felix and Ramirez drove off, and Bernalillo County Sheriff's Deputies chased them.  See id. ¶¶ 20, 21, at 3-4.  Bernalillo County Sheriff's Deputies ultimately handcuffed and arrested Felix shortly after midnight on August 10, 2002. They transported him to the Bernalillo County Detention Center ("BCDC").  BCDC officials booked Felix around 4:00 a.m..

BCDC officials placed Felix in a single occupancy cell.  See id. ¶ 30, at 4.  He was last out of his cell at 5:30 p.m. on August 10, 2002.  See id.  At approximately 7:53 p.m. that same day, BCDC corrections officers found Felix hanging by a shredded bed sheet, from a light fixture.  See id. ¶ 33, at 5.  Corrections officers were unable to resuscitate Felix.  See id. ¶ 34, at 5.

At all times material herein, BCDC had in effect grievance policies and procedures allowing inmates to address their concerns regarding any aspect of their incarceration.  See Affidavit of Michael Sisneros ¶¶ 5, 6, at 2-3 (executed March 22, 2004).  Felix and his representative, Sandra Felix[1], did not file any grievance with BCDC regarding his incarceration's conditions, including any which, according to the Complaint and the Amended Complaint, led to his death.  See id. ¶ 9, at 3; Amended Complaint ¶ 36, 37, at 5.  There is no indication that Felix or his representative availed themselves of, used, or exhausted any of the administrative remedies available at BCDC.  Specifically, following his death, Felix' representative did not file a grievance.

BCDC, pursuant to its policy, completed an investigation of Felix' death.

## PROCEDURAL BACKGROUND

On or about April 4, 2004, Ms. Felix, as representative Felix' estate, filed her initial

---

[1] Because the Plaintiff, Sandra Felix, is the decedent's mother and has the last surname, the Court will refer to the Plaintiff as "Mrs. Felix" and as the decedent as "Felix."

Complaint.  See Plaintiff's Complaint for Damages for Wrongful Death in Violation of Federal and State Law, filed April 6, 2004 (Doc. 1).  Mrs. Felix did not allege, in her Complaint or in her Amended Complaint, compliance with the PLRA's exhaustive requirements.  Felix's complaint against the City and the County centers on the conditions of Felix's confinement while he was incarcerated in BCDC.

The County and the City move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for summary judgment dismissing Felix's claims against them.  Felix opposes the motion.

## LAW REGARDING RIPENESS

To be justiciable, a claim must be ripe.  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d 1495, 1499 (10th Cir. 1995).  The two-part ripeness inquiry requires the court to "evaluate both the fitness of the issue for judicial resolution and the hardship to the parties of withholding judicial consideration."  Id. at 1499.  In applying this test, the court must "caution against a rigid or mechanical application of a flexible and often context-specific doctrine."  Sierra Club v. Yeutter, 911 F.2d 1405, 1417 (10th Cir. 1990).  In determining an issues's ripeness, courts focus on "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all."  New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499 (quoting 13A Wright & Miller, Federal Practice & Procedure 3532, at 112 (1969))( "In assessing the hardship to the parties of withholding judicial resolution, our inquiry typically turns upon whether the challenged action creates a direct and immediate dilemma for the parties."  Id. (quoting  El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 495 (1st Cir. 1992).

## THE PRISON LITIGATION REFORM ACT

**1.     The PLRA's Exhaustion Requirement.**

The PLRA requires that prisoners exhaust all available administrative remedies before filing a § 1983 action or other federal claim based on conditions of confinement. See Booth v. Churner, 532 U.S. 731, 740 n.6 (2001). 42 U.S.C. § 1997e(a) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

To satisfy the PLRA's exhaustion requirement, a "prisoner must: (1) plead his claims with a short and plain statement . . . showing that [he] is entitled to relief, in compliance with Fed. R. Civ. P. 8(a)(2); and (2) attach[] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." Fitzgerald v. Corr. Corp. of Am., 403 F.3d 1134, 1139 (10th Cir. 2005)(internal citations omitted)(quoting Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1209 (10th Cir. 2003)). As the Tenth Circuit has noted: The PLRA "requires that 'available' administrative remedies be exhausted prior to filing an action with respect to prison conditions under § 1983. Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." Jerrigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)(citing Booth v. Churner, 532 U.S. 731 (2001), and Portner v. Nussle, 534 U.S. 516 (2002)). The Tenth Circuit has indicated that there is no futility exemption to the PLRA's exhaustion requirement. See Jernigan v. Stuchell, 304 F.3d at 1032.

The parties and the Court have found only one jail suicide case that discusses the PLRA's exhaustion requirement. The United States District Court for the Northern District of Illinois considered the issue in a series of decisions. See Collins v. Seeman, No. 02 C 4493, 2003 U.S. Dist

LEXIS 23277 (N.D. Ill. December 29, 2003)(unpublished)("Collins I"); Collins v. Seeman, No. 02 C 4493, 2004 U.S. Dist. LEXIS, (N.D. Ill. February 26, 2004)(unpublished)("Collins II"). In that case, the plaintiff, Denise Collins brought a § 1983 action against the correctional officers who were responsible for the supervision and care of her deceased son, Ricky Collins. While incarcerated, Ricky committed suicide by hanging himself with a bed sheet.

In Collins I, the Defendants moved for dismissal of Collins' complaint for failure to state a claim because Collins II failed to allege exhaustion of administrative remedies, as required by the PLRA. See Collins II, 2003 WL 23144867 at *1. The Honorable Charles P. Kocoras, Chief United States District Judge, explained:

> The parties have not cited and we have not discovered any cases directly addressing whether the PLRA applies to prison suicides. However, the Supreme Court has held that the exhaustive requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516 . . . (2002). In light of this broad holding and the lack of any contrary authority, we conclude that Mrs. Collins cannot proceed on the present complaint. In this circuit, failure to allege exhaustion of administrative remedies is grounds for dismissal under 12(b)(6). Massey v. Wheeler, 221 F.3d 1030, 1034 (7th Cir. 2000). Therefore, we dismiss the complaint with prejudice. Mrs. Collins is granted leave to file an amended complaint that alleges exhaustion of remedies if she can do so within the bounds of Fed. R. Civ. Proc. 11.

Id. at *4-5. Judge Kocoras granted the motion to dismiss without prejudice and gave Collins an opportunity to amend her complaint to include information about her attempts to comply with the PLRA. Id. at *5-6.

Collins amended her complaint, alleging exhaustion of administrative remedies. See Collins II, 2004 U.S. Dist LEXIS 2877, * 2. She alleged that she requested an investigation of her son's death and the prison informed her that there was no procedure for investigating inmate suicide. See

id. The Defendants again moved to dismiss Collins' complaint for failure to state a claim. Judge Kocoras denied the motion, concluding: "Mrs. Collins did what she could to resolve her dispute through adminstrative channels, but [the prison] provided her with no remedies to pursue. The PLRA requires no less and no more." Id. at *5-6.

Although the Tenth Circuit has not addressed the issue, many other courts have concluded that the PLRA exhaustion requirement does not apply to actions brought by an individual who is not "a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). See Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000)("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 28 U.S.C. § 1997e and 42 U.S.C. § 1915."); Greig v. Goord, 169 F.3d 165, 167 (2nd Cir. 1999)("Here, we hold that litigants–like Greig–who file prison condition actions after release from confinement are not longer "prisoners" for purposes of § 1997e(a) and therefore, need not satisfy the exhaustion requirements of this provision."); Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998)(holding that a convict out on parole is not a "prisoner" as defined in the PLRA and therefore is not required to exhaust administrative remedies); Gray v. Thompson, No. 3-01-CV-1190-K, 2003 U.S. Dist. LEXIS 1804, * 5 n.3 (N. D. Tex. February 6, 2003)("[Plaintiff] is not subject to the requirements of the PLRA because he was not incarcerated when his suit was filed."); Rahim v. Sheahan, No.99 C 0395, 2001 U.S. Dist. LEXIS 17214, *16 (N.D. Ill. October 19, 2001)("The PLRA's exhaustion requirement applies only to one 'confined in any jail, prison or other correctional facility.'").

### 2.     **The Procedural Framework Applicable to § 1997e(a).**

The PLRA does not address the procedural and practical aspects of the exhaustion

requirement. In <u>Steele v. Federal Bureau of Prisons</u>, the Tenth Circuit explained § 1997e(a)'s procedural framework. <u>See</u> 355 F.3d at 1207. The Tenth Circuit considered "whether a failure to meet the exhaustion requirement of § 1997e(a) deprives the federal courts of subject matter jurisdiction over a prisoner's claim." <u>Id.</u> at 1208. The Court held that § 1997e(a)'s exhaustion requirement is not a jurisdictional bar. <u>Id.</u> at 1208-09. "As a consequence, a motion under Fed. R. Civ. P. 12(b)(1) is not an appropriate avenue for questioning an inmate's exhaustion of administrative remedies." <u>Id.</u> at 1209 (emphasis omitted).

In <u>Steele v. Federal Bureau of Prisons</u>, the Tenth Circuit also considered whether the exhaustion requirement was "an essential allegation of a prisoner's claims" or an affirmative defense. 355 F.3d at 1209. The Tenth Circuit declined to characterize § 1997e(a)'s requirement as an affirmative defense, concluding instead that "§ 1997e(a) imposes a pleading requirement on the prisoner." <u>Id.</u> at 1210. "Thus, a complaint 'that fails to allege the requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may be granted.'" <u>Id.</u> at 1210 (quoting <u>Rivera v. Allin</u>, 144 F.3d 719,731 (11th Cir. 1998)). The Tenth Circuit indicated that "[i]n many instances, a motion to dismiss under Fed R. Civ. P. 12(b)(6) will be appropriate." <u>Id.</u> at 1212 (emphasis omitted). However, when a factual dispute precludes dismissal under rule 12(b)(6), "[a] motion for summary judgment limited to the narrow issue of exhaustion and the prisoner's efforts to exhaust would then be appropriate." <u>Id.</u>

### RULE 11 LAW

> Due to sloth, inattention or desire to seize tactical advantage, lawyers have long indulged in dilatory practices. A number of factors legitimately may lengthen a lawsuit and the parties themselves may cause some of the delays. Nevertheless, many actions are extended unnecessarily by lawyers who exploit or abuse judicial procedures, especially the liberal rules of pretrial discovery. The glacial pace of much

>litigation breeds frustration with the federal courts and, ultimately, disrespect for the law.

Roadway Express, Inc. v. Piper, 447 U.S. 752, 757 n.4 (1980)(internal citations omitted). In response to this abuse, and to prevent these sort of practices, Congress adopted rule 11 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 11. Currently, rule 11 requires that an attorney or the party sign every paper filed with the District Court. By his signature, the signer certifies:

>[T]o the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.

Willy v. Coastal Corp., 503 U.S. 131, 135 n.1 (1992)(citing Fed. R. Civ. P. 11). When the court determines a pleading to be in contravention of the rule, the Court may enter against both the signer and the party he represents "an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee." Id.

The central purpose of rule 11 is to deter baseless filings in the district court and thus, consistent with the Rules Enabling Act's grant of authority, streamline the administration of procedures in the federal courts. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). "Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and 'not interposed for any improper purpose.'" Id. The Court "shall" penalize an attorney who signs a paper without such a substantiated belief by "an appropriate sanction." Id.

Such a sanction may include payment of the other parties' expenses. See id. Although the

Court must read the rule in light of concerns that it will "spawn satellite litigation and chill vigorous advocacy," the Court's interpretation must give effect to the rule's central goal of deterrence. Id. Before the 1993 Amendment, violation was complete when the paper was filed. See Szabo Food Service, Inc. v. Canteen Corp., 823 F.2d 1073, 1077 (7th Cir. 1987). Congress amended rule 11 in 1993 to provide a "safe harbor" period, which requires the party seeking rule 11 sanctions to wait 21 days from service before filing the motion with the court, allowing the filing party opportunity to withdraw or correct the challenged paper. See Fed. R.Civ.P. 11(c)(1)(A). The amendment does not, however, affect the court's discretion to impose sanctions for uncorrected violations.

This Court's authority to impose rule 11 sanctions rests in the "inherent powers" of the federal courts – those powers "'necessary to the exercise of all others.'" Roadway Express, Inc. v. Piper, 477 U.S. at 764. Thus, to impose sanctions, the Court must determine "whether the attorney has abused the judicial process and, if so, what sanction would be appropriate." Cooter & Gell v. Hartmarx Corp.,496 U.S. at 396. In doing so, the Court must consider factual questions regarding the nature of the attorney's prefiling inquiry and the factual basis of the pleading or other paper.

When the Court considers whether a pleading is "warranted" by existing law or a good faith argument for changing the law, the Court is presented with legal issues. See id. at 399. The district court has broad discretion in conducting this review. See Adamson v. Bowen, 855 F.2d 668, 672 (10th Cir. 1988)(holding that in the Tenth Circuit the standard of review for lower court decisions regarding rule 11 violations and sanctions is abuse of discretion).

## ANALYSIS

While the parties largely make policy arguments about why the exhaustion requirements should or should not apply to a deceased prisoner, the Court believes that the questions presented

can be largely answered with a careful examination of the statute's language. Because the Court concludes that a deceased prisoner or a deceased prisoner's personal representative is not "a prisoner confined in any jail, prison, or other correctional facility . . . ," the Court need not decide whether the procedures at BCDC were "available" to Felix or whether the grievance procedures would have been futile. Accordingly, the Court will deny the motion to dismiss.

**I.     THE COURT WILL TREAT THE MOTION AS A RULE 12(b)(6) MOTION.**

Mrs. Felix argues that the issue here is more properly framed under a rule 12(b)(1) motion. The Defendants argue that a motion for summary judgment is appropriate in this case. The Tenth Circuit indicated in Steel v. Federal Bureau of Prisons that failure to meet the exhaustion requirement is not a jurisdictional bar. Thus, the motion is more in the nature of a motion for summary judgment. Because the Court concludes that the Defendants' motion presents no genuine issue of material fact, the Court will treat the motion as it is labeled -- as a motion for summary judgment under rule 56.

**A.     MRS. FELIX' CLAIM IS RIPE.**

Mrs. Felix argues that the issues in this case are ripe for judicial consideration. The Court agrees. This case does not involve "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." New Mexicans for Bill Richardson v. Gonzales, 64 F.3d at 1499 (13A Wright & Miller, Federal Practice & Procedure 3532, at 112 (1969)). Mrs. Felix seeks damages for the death of her son. The events at issue in this case have already occurred. This case is fit for judicial resolution.

**B.     THERE ARE NO GENUINE ISSUES OF MATERIAL FACT IN DISPUTE.**

Mrs. Felix, in her response to the Defendants' motion for summary judgment, disputes all or portions of four paragraphs in the City and County's statement of undisputed material facts. Mrs.

Felix does not, however, dispute the City and the County's facts. Mrs. Felix' only dispute is whether the PLRA's requests apply to the wrongful death claims of deceased inmates or of their representatives. That is largely a legal question.

## II.     THE PLRA DOES NOT REQUIRE THAT THE COURT DISMISS MRS. FELIX'S COMPLAINT AS A MATTER OF LAW.

There can be little dispute that the PLRA, on its face, requires prisoners to exhaust all administrative remedies before filing suit. See 42 U.S.C. §1997e(a). The PLRA's exhaustion requirement, however, only applies to actions brought "by a prisoner confined in any jail, prison, or other correctional facility." 42 U.S.C. § 1997e(a). Mrs. Felix is not a prisoner confined in a jail. Felix is no longer a prisoner confined in a jail. Thus, the PLRA does not apply to this case.

To read "a prisoner confined in any jail, prison, or other correctional facility" as including deceased inmates or their personal representatives would be to give the statute's words new meanings. It would not be a reasonable extension to read the statutes' language to require dead or non-prisoner relatives of the dead to adhere to the prison's grievance procedures. The Court will not read the PLRA to include the filing of a grievance by a deceased inmate, nor will it read the PLRA to include a grievance requirement for a deceased inmate's representative, a non-prisoner.

This conclusion is in accord with the many courts that have considered similar issues, such as claims by ex-prisoners. See Page v. Torrey, 201 F.3d at 1140 ("[W]e hold that only individuals who, at the time they seek to file their civil actions, are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are 'prisoners' within the definition of 28 U.S.C. § 1997e and 42 U.S.C. § 1915."); Greig v. Goord, 169 F.3d at 167 ("Here, we hold that litigants–like Greig–who file prison condition actions after release from confinement are not longer "prisoners" for

purposes of § 1997e(a) and therefore, need not satisfy the exhaustion requirements of this provision."); Kerr v. Puckett, 138 F.3d at 323 (holding that a convict out on parole is not a "prisoner" as defined in the PLRA and therefore is not required to exhaust administrative remedies); Gray v. Thompson, 2003 U.S. Dist. LEXIS 1804, * 5 n.3 ("[Plaintiff] is not subject to the requirements of the PLRA because he was not incarcerated when his suit was filed."); Rahim v. Sheahan, 2001 U.S. Dist. LEXIS 17214, *16 ("The PLRA's exhaustion requirement applies only to one 'confined in any jail, prison or other correctional facility.'").

Felix also argues that death is an incapacity -- the ultimate incapacity -- that should render the PLRA requirements "unavailable" to physically injured and dead inmates, giving those inmates a reasonable amount of time after the injury to file a grievance. See Days v. Johnson, 322 F.3d 863, 868 (5th Cir. 2003). The Court need not decide whether death is an incapacity that should waive any requirement to file a grievance after an inmate suffers a physical injury. Because the Court concludes that the PLRA's exhaustion requirement -- by its plain language -- does not apply in this case, the Court need not decide whether administrative remedies under the PLRA are "unavailable" to deceased inmates or their representatives.

A court should apply a congressional statutes' plain meaning unless such application would lead to an absurd result. There is nothing absurd about the Court's result. Indeed, Mrs. Felix' many policy arguments, while not conclusive of the result, show that the result is not absurd.

**IV.   THE COURT WILL NOT ENTER ANY SANCTIONS AGAINST THE CITY OR AGAINST THE COUNTY.**

Mrs. Felix argues that the notion that the PLRA applies to deceased inmates is absurd. Mrs. Felix contends that the City and the County's motion is a vexatious attempt to frustrate the judicial

process with a frivolous motion and to harass him. By citing only to rule 11, Felix appears to be invoking that rule.

The Court does not believe, however, that, given the result in <u>Collins v. Seeman</u>, the Defendants brought this motion in bad faith. Moreover, rule 11 requires Felix to undertake certain steps before asking the Court to award her rule 11 sanctions. Rule 11 requires Felix to make a motion for sanctions "separately from other motions or requests and [to] describe the specific conduct alleged to violate [rule 11] subdivision (b)." Fed. R. Civ. P. 11(c)(1)(A). The motion must be served, but may not be filed with the Court unless " within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." <u>Id.</u> If warranted, the Court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. <u>See</u> <u>id.</u>

It does not appear from the materials presented that Felix complied with the procedural requirements for filing a motion for sanctions under rule 11 of the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 11(c)(1)(A). The Court will, therefore, deny Felix' request for sanctions.

**IT IS ORDERED** that Defendants Bernalillo County and the City of Albuquerque's Motion for Summary Judgment for Failing to Exhaust Administrative Remedies Required Under the Prison Litigation Reform Act is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Augustine M. Rodriguez
Rodriguez Law Firm
Albuquerque, New Mexico

>*Attorneys for the Plaintiff*

Jeffrey L. Baker
The Baker Law Firm
Albuquerque, New Mexico

>*Attorneys for Defendants County of Bernalillo and City of Albuquerque*

Deborah B. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

>*Attorneys for Defendant Correctional Medical Services, Inc.*

William D. Slease
Slease & Martinez, P.A.
Albuquerque, New Mexico

>*Attorneys for Defendant Bernalillo County Sheriff's Department*