IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA FELIX, as Personal Representative
of the estate of THOMAS FELIX, JR.,

      Plaintiff,

v.                                                                                                                     No. CIV 04-0374 JB/RLP

BERNALILLO COUNTY, a local public body
of the State of New Mexico, CITY OF ALBUQUERQUE,
a local public body of the State of New Mexico,
BERNALILLO COUNTY SHERIFF'S DEPARTMENT,
and CORRECTIONAL MEDICAL SERVICES, INC.,
a Missouri Corporation,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Correctional Medical Services, Inc.'s Motion for Summary Judgment, filed March 29, 2005 (Doc. 52). The Court held a hearing on this matter on June 13, 2005. The primary issue is whether the Defendant Correctional Medical Services, Inc. ("CMS") is subject to liability under 42 U.S.C. § 1983. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will grant the Defendants' motion and dismiss the § 1983 claims with prejudice. The Court will dismiss without prejudice all remaining claims -- all of which sound in state law.

**FACTUAL BACKGROUND**

This lawsuit arises out of Tomas Felix' suicide on August 10, 2002.[1] The material facts are not in dispute.

---

[1] Because the Plaintiff, Sandra Felix, is the decedent's mother and has the same surname, the Court will refer to the Plaintiff as "Mrs. Felix" and to the decedent as "Felix."

On December 14, 2001, CMS staff at Bernalillo County Detention Center ("BCDC") medically screened Felix. See Medical History and Screening Form (dated December 14, 2001). Felix indicated on his medical questionnaire that he had no medical problems and was on no prescribed medications. See id. at 1. Felix signed the medical questionnaire form acknowledging that he had answered all of the medical questions truthfully. See id. at 1. On page 2 of the form, Felix answered a series of mental health questions and indicated: (i) that he had never been treated for mental or emotional problems; (ii) that he had never attempted suicide; (iii) that he was not presently suicidal; (iv) that he did not plan to injure himself; (v) that he had never injured himself; and (vi) that he did not wish to speak to a Mental Health Counselor. See id. at 2.

On July 16, 2002, CMS's staff at BCDC again screened Felix. See Medical History and Screening Form (dated July 16, 2002). Felix indicated on his medical questionnaire that he had no medical problems and was on no prescribed medications. See id. at 1. Felix signed the medical questionnaire form acknowledging that he had answered all of the medical questions truthfully. See id. at 1. On page 2 of the form, Felix answered the mental health questions and indicated: (i) that he had never been treated for mental or emotional problems; (ii) that he had never attempted suicide; (iii) that he was not presently suicidal; (iv) that he did not plan to injure himself; (v) that he had never injured himself; and (vi) that he did not wish to speak to a Mental Health Counselor. See id. at 2.

On August 10, 2002, at 3:40 a.m., a CMS employee again screened Felix after he was admitted at BCDC. See Medical History and Screening Form (dateded August 10, 2002). Felix indicated the had been in the facility previously and again denied any medical problems. See id. at 1. Felix than indicated that he was not on medication. See id. at 1. His vital signs were all within normal limits. See id. at 1. Felix signed the form, acknowledging that he had answered all of the

medical questions truthfully and that he had been informed how to obtain health services. See id. at 1.  Felix again answered the mental health questions on page 2 of the Medical History and Screening Form.  See id. at 2.  Felix again indicated: (i) that he had never been treated for a mental or emotional problem; (ii) that he had never attempted suicide; (iii) that he was not presently suicidal; (iv) that he intended to harm himself; (v) that he had ever attempted to harm himself; and (vi) that he wished to consult a Mental Health Counselor.  See id. at 2.

## PROCEDURAL BACKGROUND

Felix' Complaint sets forth allegations of negligence and inadequate medical care under the New Mexico Tort Claims Act and under the Fourteenth Amendment.  CMS moves the Court for summary judgment.

## STANDARDS FOR DECIDING SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See id. at 323.  The moving party can meet the burden by highlighting for the court an insufficiency of evidence as to an essential element of the nonmovant's claim.  See id.  Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant.  See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. at 324).

The non-moving party may not rest on his pleadings, but must set forth specific facts.  See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Under

rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief. See Tavery v. United States, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994). "A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts." Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177 (10th Cir. 2000).

For the purposes of summary judgment, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff[,]" the court should deny summary judgment. MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)(quoting Palucki v. Sears, Robueck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989)).

A court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. A "genuine" factual dispute requires the non-moving party to show more than a mere "scintilla of evidence" to overcome a motion for summary judgment. Id. at 252.

The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative. See id. at 250-51. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not

escape summary judgment in the mere hope that something will turn up at trial." Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

## APPLICABLE LAW

Although CMS is a private corporation, the parties do not dispute that it is a state actor for purposes of § 1983.  The parties also do not dispute that the Monell analysis applies to CMS.  Thus it is significant that Mrs. Felix does not sue an individual employee at CMS, but only the corporation.

**1.      Due Process Claims.**

"Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment."  Hocker by Hocker v. Walsh, 22 F.3d 995, 998 (10th Cir. 1994). Thus, the court must judge such claim against the "deliberate indifference to serious medical needs test of Estelle v. Gamble, 429 U.S. 97 (1976)."  Id. (internal quotations and citations omitted).  To meet this test, a plaintiff must demonstrate: (i) actual knowledge by the state actor of the specific risk of harm to the detainee, or that the risk was so substantial or pervasive that knowledge can be inferred; (ii) failure to take reasonable measures to avert the harm; and (iii) the state actor's failure justifies liability.  See id. at 1000.  When the facts fail to suggest knowledge of the specific risk or that the risk was so substantial or pervasive that knowledge can be inferred, the state actor cannot be said to have violated the detainee's constitutional rights.  See id.

**2.      42 U.S.C. § 1983.**

There is no vicarious liability or respondeat superior liability under § 1983.  See Monnell v.

Dep't of Social Servs., 436 U.S. 658, 694 (1978); Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992). A plaintiff suing a municipality pursuant to § 1983 for the acts of one or more of its employees must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. at 694). See, e.g., Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (10th Cir. 1992); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996). Negligence alone is insufficient to establish liability against the governmental entity. See Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992). The plaintiff must plead and prove that the governmental entity was "deliberately indifferent" to the plaintiff. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); D.T. v. Indep. Sch. Dist., 894 F.2d 1176, 1192 (10th Cir. 1990).

## ANALYSIS

### I.    THERE ARE NO GENUINELY DISPUTED ISSUES OF MATERIAL FACT.

There are no factual disputes that might affect the outcome of the suit under governing law. Mrs. Felix does not dispute that, on three occasions, CMS employees medically screened Felix. Mr. Felix does not dispute that on those three occasions Felix indicated: (i) that he had never been treated for a mental or emotional problem; (ii) that he had never attempted suicide; (iii) that he was not presently suicidal; (iv) that he intended to harm himself; (v) that he had ever attempted to harm himself; and (vi) that he wished to consult a Mental Health Counselor. Although Mrs. Felix asserts that the medical questionnaire on which CMS relies is based on policy that prevents the sharing of information and therefore promotes the deprivation of constitutional rights of pretrial detainees, she points to no evidence indicating that such a policy, practice, or procedure existed. On the record

before it, the Court concludes that no genuine material facts are in dispute.

## II. CMS IS ENTITLED, AS A MATTER OF LAW, TO JUDGMENT IN ITS FAVOR ON ALL OF FELIX'S FEDERAL CLAIMS.

The parties agree that the Monell standards apply to CMS. Accordingly Mrs. Felix must point to evidence showing a genuine issue of material fact of a due process violation, and of policy or custom that was the motivating force behind the alleged constitutional violation. Mrs. Felix does not create a genuine issue of material fact on either precluding judgment as a matter of law.

### A. CMS DID NOT VIOLATE FELIX' CONSTITUTIONAL RIGHTS.

Mrs. Felix has not demonstrated that there is a genuine issue of material fact whether CMS violated Felix' constitutional rights. She asserts that CMS' intake screening procedures and its failure to share information between medical intake screeners and arresting officers led to Felix' death. Mrs. Felix, however, must demonstrate evidence of both a constitutional violation, and a municipal policy or custom that drove the constitutional violation. See Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. at 694).

None of the CMS employees who encountered Felix had actual knowledge that Felix was suicidal. What CMS employees knew was that Felix denied that he was or had ever been suicidal or at risk of self harm. Under these facts, there is not evidence that CMS employees had any reason to know Felix was suicidal or that a risk of suicide was so substantial or pervasive that CMS employees should have known that Felix was suicidal. Given that there is no evidence that the CMS employees had any actual knowledge that Felix was suicidal, and the lack of facts that would support the notion that such risk was substantial or pervasive, Mrs. Felix has not demonstrated that a CMS employee

violated Felix' rights. Mrs. Felix therefore cannot succeed with her constitutional claim against CMS.

Therefore, CMS is entitled to judgment in its favor on Felix' federal claims. Felix's federal claims against CMS fail. The Court will dismiss Mrs. Felix's federal claims with prejudice.

### B. THERE IS NO EVIDENCE OF A CUSTOM OR POLICY MOTIVATING ANY CONSTITUTIONAL DEPRIVATION.

It is important that Mrs. Felix brings her § 1983 claim against CMS and not against any of its employees. Mrs. Felix must prove that CMS was deliberately indifferent to her decedent's rights. Mrs. Felix cannot make this showing.

Even assuming that Mrs. Felix establishes that CMS employees violated Felix' constitutional rights, CMS is nonetheless entitled to summary judgment on the § 1983 claims because there is no evidence that a CMS policy, practice or procedure was the motivating factor behind a constitutional deprivation. Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d at 1316. Mrs. Felix argues such a policy exists, but identifies no evidence to support that assertion.

Accordingly, the Court will grant summary judgment in favor of the Department on the § 1983 claims.

### III. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.

Having dismissed the claim on which the Court had original federal jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims. See Pruitt v. Comcast Cable Holdings, LLC, 100 Fed. Appx. 713, 717 (10th Cir. June 3, 2004)(unpublished decision)(holding that the district court's refusal to exercise supplemental jurisdiction over plaintiff's state law contract claims after dismissing all federal claims was "clearly authorized under 28 U.S.C. § 1367(c)(3)"). Under 28 U.S.C. § 1367(a), "in any civil action of

which the district courts have original jurisdiction, [a] district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court, however, "may decline to exercise supplemental jurisdiction . . . if[:]"

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The third provision applies to this case. The Court has dismissed the claims on which it had original jurisdiction -- the § 1983 claims. The remaining claims sound in state law.

The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it. In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), decided more than twenty years before Congress passed 28 U.S.C. § 1367, the Supreme Court addressed the federal district courts' ability to exercise jurisdiction over state law claims. In explaining that such power existed, the Supreme Court noted that it "need not be exercised in every case in which it is found to exist." Id. at 726. The Supreme Court continued:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Id. (footnotes omitted). See Bd. of County Comm'rs v. Geringer, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002)("[T]he district court's ruling [in which it declined to review the state law claims] comports

with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial . . . .").

Although there are similar elements between the federal law and New Mexico law, there are also important differences. Because the Court, by resolving the federal claim, need not address all state law elements, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. The state court is the more appropriate forum to resolve whether the Department's actions constituted torts under New Mexico law.

**IT IS ORDERED** that Defendant Correctional Medical Services, Inc.'s Motion for Summary Judgment is granted on Plaintiff Sandra Felix's § 1983 claims, and the Court will dismiss these the First, Second, Third, Fourth Causes of Action as against CMS with prejudice. The Court will dismiss without prejudice all remaining claims against CMS -- all of which sound in state law.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Augustine M. Rodriguez, Jr.
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

William D. Slease
Jonlyn M. Martinez

Slease & Martinez, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant Bernalillo County Sheriff's Department*

Jeffrey L. Baker
Baker Law Firm
Albuquerque, New Mexico

*- and -*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

 *Attorneys for Defendant Bernalillo County*

Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

 *Attorneys for Defendant Correctional Medical Services, Inc.*

Jeffrey L. Baker
Albuquerque,  New Mexico

 *Attorney for the City of Albuquerque*