IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SANDRA FELIX, as Personal
Representative of the Estate of
Thomas Felix, Jr.,

       Plaintiff,

vs.                                                                                                                     No. CIV 04-0374 JB/RLP

BERNALILLO COUNTY, a local
public body of the State of New Mexico,
CITY OF ALBUQUERQUE, a local
public body of the State of New Mexico,
BERNALILLO COUNTY SHERIFF'S
DEPARTMENT, and CORRECTIONAL
MEDICAL SERVICES, INC.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendants Bernalillo County and the City of Albuquerque's Motion for Summary Judgment, filed April 7 2005 (Doc. 59). The Court held a hearing on this matter on June 13, 2005. The primary issue is whether the Defendants Bernalillo County ("the County") and the City of Albuquerque ("the City")(collectively "the Defendants") are subject to municipal liability under 42 U.S.C. § 1983. Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, the Court will grant the Defendants' motion and dismiss the § 1983 claims with prejudice. The Court will dismiss without prejudice all remaining claims -- all of which sound in state law.

## **FACTUAL BACKGROUND**[1]

This lawsuit arises out of Tomas Felix's suicide on August 10, 2002.[2] The material facts are not in dispute.

On August 9, 2002, Bernalillo County Sheriff's Department deputies, Violent Crimes Detective Jason Katz and Augustine Lucero, arrested Felix and transported him to the Bernalillo County Detention Center ("BCDC"). See Katz Aff. ¶ 14, at 3; Affidavit of Shaun Sanchez ¶¶ 2, 3, 4, at 1-2 (executed April 1, 2005)(hereinafter "Sanchez Aff."); Plaintiff's Amended Complaint for Wrongful Death in Violation of Federal and State Law ¶¶ 24-29, at 4, filed June 22, 2004 (Doc. 10). Katz, Lucero, and Sanchez did not inform anyone that they thought that Felix was suicidal or was contemplating self harm. See Katz Aff. ¶ 25, at 4; Lucero Aff. ¶ 21, at 3; Sanchez Aff. ¶ 11, at 2. Mrs. Felix agrees with this fact, but avers that the BCDC officials had a duty to protect Felix by instituting policies between arresting officers and jail officials.

Upon his arrival at BCDC, a trained medical care provider screened Felix. See Affidavit of Jonathan Polner ¶¶ 2-3, at 1 (executed January 12, 2005); Correctional Medical Services Medical History and Screening at 1-2 (dated August 10, 2002). At that time, Felix denied any suicidal thoughts or the need to be seen by a mental health provider during this intake screening process. See

---

[1] The Court will recite only the facts relevant to the Plaintiff's federal claims. For example, in her response, Mrs. Felix discusses the "30 minute 'alive and well' check," which she alleges the officers did not conduct before Felix' suicide. See Response ¶¶ 3-5, at 3. At the hearing, however, the Plaintiff conceded that this fact relates only to his state law negligence claim. See Transcript of Hearing at 46:10 - 47:1 (taken June 13, 2005).

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

[2] Because the Plaintiff, Sandra Felix, is the decedent's mother and has the same last surname the Court will, for clarity, refer to the Plaintiff as "Mrs. Felix" and to the decedent as "Felix."

Correctional Medical Services Medical History and Screening ¶¶ 3-5, at 2 (responding "NO" to "Have you ever attempted suicide?"; "Are you suicidal now?"; and "Do you plan to injure yourself?"). Felix had been incarcerated on two prior occasions at BCDC and, each time, a trained emergency technician conducted this interview. See Correctional Medical Services Medical History and Screening Form at 1-2 (dated December 14, 2001); Correctional Medical Services Medical History and Screening Form at 1-2 (dated July 16, 2002). The jail's initial screening process requires completion of such medical questionnaires regarding mental health. As on the August 10, 2002 form, Felix denied any past suicide attempts or any intent to injure himself on the two earlier questionnaires. See Correctional Medical Services Medical History and Screening Form at 2 (dated December 14, 2001); Correctional Medical Services Medical History and Screening Form at 2 (dated July 16, 2002). Mrs. Felix does not contest that these medical health interviews occurred or otherwise challenge the medical questionnaires' authenticity. Instead, Mrs. Felix alleges that the Defendants had a duty to institute policies and procedures designed to ensure that arresting officers, such as Katz and Lucero, share information with the medical technicians at BCDC. See Response ¶¶ 7-9, at 4.

At BCDC, officials placed Felix in a single occupancy cell. See id. ¶ 30, at 4. He was last out of his cell at 5:30 p.m. on August 10, 2002. See id. Officials returned Felix to his cell at approximately 6:00 p.m. See Letter from Joseph Alderete to Sgt. George Doyle at 1 (dated August 10, 2002).

Mrs. Felix spoke by telephone with Felix twice on August 10, 2002 while Felix was in BCDC. See Deposition of Sandra Felix at 9:1 - 10:15 (taken December 15, 2004). At no time during either of these conversations did Felix say anything to his mother that led her to believe that

Felix was considering suicide or self harm. See id. at 10:8 - 12:20.

Felix also spoke with a friend, Rosalina Trujillo, while in jail on August 10, 2002. See Deposition of Rosalina Trujillo at 17:21 - 18:17 (taken March 3, 2005)(hereinafter "Trujillo Depo."). Nothing during his conversation with Trujillo led her to believe that Felix was considering suicide or self harm. See id. at 19:2-8; id. at 20:5-7. Based on the BCDC investigation material, no one at the jail received information from any source, including Katz and Lucero, that Felix was suicidal. See Affidavit of Ronald Torres ¶ 5, at 3 (executed April 6, 2005). These documents also do not reveal that his behavior at the jail suggested that he was suicidal. See id.

Felix maintains, however, that, based on the totality of the circumstances, Katz and Lucero had notice that Tomas was suicidal, but did not share this information with the medical professionals or officials at BCDC.[3] According to Felix, the Defendants should have implemented polices and procedures to ensure arresting officers and jail officials share such information.

At approximately 7:53 p.m. that same day, BCDC corrections officers found Felix hanging from a light fixture with a shredded bed sheet. See id. ¶ 33, at 5. Corrections officers were unable to resuscitate Felix, see id. ¶ 34, at 5, and he was ultimately pronounced dead.

## PROCEDURAL BACKGROUND

Mrs. Felix brings her claims against the County and the City for due process violations pursuant to 42 U.S.C. § 1983 and for negligence pursuant to the New Mexico Tort Claims Act. Mrs. Felix' § 1983 claims are against the County and the City, and not against any of their individual

---

[3] In discussing the totality of the circumstances, Mrs. Felix discusses Lucero's interview of Jose Ramirez, who was present with Felix when he was arrested. The Court incorporates by references its Memorandum Opinion Order on Defendant Bernalillo County Sheriff's Department's Motion for Summary Judgment.

employees. See Amended Complaint ¶¶ 38-53, 58-77, at 5-8, 9-11.  The County and the City move, pursuant to rule 56 of the Federal Rules of Civil Procedure, for summary judgment.

## STANDARDS FOR DECIDING SUMMARY JUDGMENT MOTIONS

Rule 56 of the Federal Rules of Civil Procedure allows a court to grant summary judgment if a party is entitled to judgment as a matter of law and there are no genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of establishing the absence of any genuine issue of material fact.  See id. at 323.  The moving party can meet the burden by highlighting for the court an insufficiency of evidence as to an essential element of the nonmovant's claim.  See id.  Once met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmovant. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(citing Celotex Corp. v. Catrett, 477 U.S. at 324).

The non-moving party may not rest on his pleadings, but must set forth specific facts.  See Applied Genetics Int'l v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  Under rule 56(e), only statements made with actual knowledge will support a motion for summary judgment; the court must disregard statements of mere belief.  See Tavery v. United States, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994).  "A plaintiff cannot create a triable issue of fact by making an assertion without supporting facts."  Kelley v. Goodyear Tire & Rubber Co., 220 F.3d 1174, 1177 (10th Cir. 2000).

For the purposes of summary judgment, the court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's

favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If "the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff[,]" the court should deny summary judgment.  MacDonald v. E. Wyo. Mental Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991)(quoting Palucki v. Sears, Robueck & Co., 879 F.2d 1568, 1570 (7th Cir. 1989)).

A court should, however, grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 248.  A "genuine" factual dispute requires the non-moving party to show more than a mere "scintilla of evidence" to overcome a motion for summary judgment.  Id. at 252.

The court may grant summary judgment if the non-moving party's evidence is merely colorable or is not significantly probative.  See id. at 250-51.  "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52.

## APPLICABLE LAW

It is important to emphasize that Mrs. Felix has not brought claims against the individual County or City employees.  Instead, she has sued only the County, the City of Albuquerque, and the

Department.[4]  Accordingly, not only must Mrs. Felix establish that one of the employees committed a constitutional violation, but she must also show that the County and/or the City had a policy or custom that was the motivating force behind the constitutional deprivation.

**1.    Due Process Claims.**

"Under the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment."  Hocker by Hocker v. Walsh, 22 F.3d 995, 998 (10th Cir. 1994). Thus, a court must judge such claim against the "deliberate indifference to serious medical needs test of Estelle v. Gamble, 429 U.S. 97 (1976)."  Id. (internal quotations and citations omitted).  To meet this test, a plaintiff must demonstrate: (i) actual knowledge by the state actor of the specific risk of harm to the detainee, or that the risk was so substantial or pervasive that knowledge can be inferred; (ii) failure to take reasonable measures to avert the harm; and (iii) the state actor's failure justifies liability.  See id. at 1000.  When the facts fail to suggest knowledge of the specific risk or that the risk was so substantial or pervasive that knowledge can be inferred, the state actor cannot be said to have violated the detainee's constitutional rights.  See id.

**2.    42 U.S.C. § 1983.**

There is no vicarious liability or respondeat superior liability under § 1983.  See Monnell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Jantz v. Muci, 976 F.2d 623, 631 (10th Cir. 1992). A plaintiff suing a municipality pursuant to § 1983 for the acts of one or more of its employees must prove: "(1) that a municipal employee committed a constitutional violation, and (2) that a municipal

---

[4] The Department is not a party to this motion, but it brought a separate Motion for Summary Judgment.  The Court incorporates by reference its Memorandum Opinion and Order in the Defendant Bernalillo County Sheriff's Department's Motion for Summary Judgment.

policy or custom was the moving force behind the constitutional deprivation." Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998)(citing Monell v. Dep't of Social Servs., 436 U.S. at 694). See, e.g., Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (10th Cir. 1992); Wilson v. Meeks, 98 F.3d 1247, 1255 (10th Cir. 1996). Negligence alone is insufficient to establish liability against the governmental entity. See Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992). The plaintiff must plead and prove that the governmental entity was "deliberately indifferent" to the plaintiff. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); D.T. v. Indep. Sch. Dist., 894 F.2d 1176, 1192 (10th Cir. 1990).

## ANALYSIS

**I.   THERE ARE NO GENUINELY DISPUTED ISSUES OF MATERIAL FACT.**

There are no factual disputes that might affect the outcome of the suit under governing law. Mrs. Felix does not dispute that, on three occasions, trained medical professionals screened Felix during intake at BCDC. She does not dispute that on those three occasions Felix indicated: (i) that he had never been treated for a mental or emotional problem; (ii) that he had never attempted suicide; (iii) that he was not presently suicidal; (iv) that he intended to harm himself; (v) that he had never attempted to harm himself; and (vi) that he wished to consult a Mental Health Counselor. Although Mrs. Felix asserts that the medical questionnaire on which the City and the County relies is based on policy that prevents the sharing of information and therefore promotes the deprivation of constitutional rights of pretrial detainees, she points to no evidence indicating that such a policy, practice, or procedure existed. On the record before it, the Court concludes that no genuine material facts are in dispute.

## II. THE CITY AND THE COUNTY ARE ENTITLED, AS A MATTER OF LAW, TO JUDGMENT IN ITS FAVOR ON ALL OF FELIX' FEDERAL CLAIMS.

Mrs. Felix did not any of the individual employees, but only the City and the County.[5] Thus, she assumes the burden of showing that some City and/or County policy or custom was the motivating factor behind the alleged constitutional deprivation. Mrs. Felix offers no evidence to support this essential element.

### A. THE CITY AND COUNTY EMPLOYEES DID NOT VIOLATE FELIX' CONSTITUTIONAL RIGHTS.

Felix has not demonstrated that there is a genuine issue of material fact whether a City or County employee violated his constitutional rights.

Mrs. Felix does not argue that the BCDC employees had actual knowledge of a specific risk of harm to her son, or even that the BCDC had enough information from which a "risk [that] was so substantial or pervasive that knowledge can be inferred." Hocker by Hocker v. Walsh, 22 F.3d at 1000 (quoting Berry v. City of Muskogee, 900 F.2d 1489, 1498 (10th Cir.1990))(quotation omitted). Instead, Mrs. Felix alleges that the deputies had notice that Felix was suicidal, and that none of the Defendants had implemented a policy requiring the arresting officers to share information to the jail officials. See Transcript of Hearing at 42:3 - 43:22. Under Hocker by Hocker v. Walsh, however, Mrs. Felix must establish either actual knowledge or notice of a risk so substantial or pervasive that knowledge can be inferred, and the Court does not believe the undisputed facts could support a finding that this element has been met. In a separate Memorandum Opinion and Order, the Court has found that the arresting deputies did not have actual knowledge

---

[5] At the hearing, counsel for the City and the County explained the relationship between the two entities. According to counsel, the County owns the building in which the jail is located, but the City operates the jail.

or enough information from which a "risk [that] was so substantial or pervasive that knowledge can be inferred." Hocker by Hocker v. Walsh, 22 F.3d at 1000 (quoting Berry v. City of Muskogee, 900 F.2d 1489, 1498 (10th Cir.1990))(quotation omitted). See Memorandum Opinion and Order, Defendant Bernalillo County Sheriff's Department's Motion for Summary Judgment, filed August 31, 2005.

None of the jail employees who encountered Felix had actual knowledge that Felix was suicidal. The documents from the jail so reflect, and Mrs. Felix has not offered any evidence to contradict this fact. Given that there is no evidence that the jail employees had any actual knowledge that Felix was suicidal, and the lack of facts that would support the notion that such risk was substantial or pervasive, Felix has not demonstrated that a County or City employee violated Felix' rights. Mrs. Felix therefore cannot succeed with her constitutional claim against the County or the City.

Moreover, the County does not have any "employees" within the jail, because it is solely the owner of the building; the City operates the jail. Thus, to the extent that Mrs. Felix alleges the jail employees violated Felix' constitutional rights, such claim cannot lie against the County.

Therefore, the County and the City are entitled to judgment in its favor on Mrs. Felix' federal claims brought against them. Mrs. Felix' federal claims against the County and the City fail because she cannot show a constitutional violation. The Court will dismiss Mrs. Felix' federal claims against the County and the City with prejudice.

**B.    THERE IS NO EVIDENCE OF A CUSTOM OR POLICY MOTIVATING ANY CONSTITUTIONAL DEPRIVATION.**

It is important that Mrs. Felix brings his § 1983 claim against the County and the City and

-10-

not against any of its employees. Mrs. Felix must prove that the County and the City was deliberately indifferent to her son's rights. Mrs. Felix cannot make this showing.

Even assuming that Mrs. Felix established that the deputies violated Felix' constitutional rights, the County and the City are nonetheless entitled to summary judgment on the § 1983 claims because there is no evidence that a County or City custom or policy was the motivating factor behind any such constitutional deprivation. See Myers v. Okla. County Bd. of County Comm'rs, 151 F.3d 1313, 1316 (10th Cir. 1998). The City implemented procedures by which, in an initial screening process, a medical professional administers mental health questionnaires to all pretrial detainees. There is no evidence of a policy or custom that was the motivating factor behind the alleged constitutional deprivation. Indeed, the record shows, without any contradiction, that the City has taken affirmative steps to prevent such occurrences.

Moreover, to the extent that Mrs. Felix argues that the deputies acted negligently, negligence alone is insufficient to establish liability against the governmental entity. See Woodward v. City of Worland, 977 F.2d 1392, 1400 (10th Cir. 1992). The plaintiff must plead and prove that the governmental entity was "deliberately indifferent" to the plaintiff. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); D.T. v. Indep. Sch. Dist., 894 F.2d 1176, 1192 (10th Cir. 1990). Mrs. Felix has made no such showing.

Accordingly, the Court will grant summary judgment in favor of the County and the City on the § 1983 claims.

### III. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS AGAINST THE CITY AND COUNTY.

Having dismissed the claims against the County and the City over which the Court had

original federal jurisdiction, and in separate opinions having dismissed all federal claims against the other Defendants, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims against the County and the City.  See Pruitt v. Comcast Cable Holdings, LLC, 100 Fed. Appx. 713, 717 (10th Cir. June 3, 2004)(unpublished decision)(holding that the district court's refusal to exercise supplemental jurisdiction over plaintiff's state law contract claims after dismissing all federal claims was "clearly authorized under 28 U.S.C. § 1367(c)(3)"). Under 28 U.S.C. § 1367(a),  "in any civil action of which the district courts have original jurisdiction, [a] district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."   A district court, however, "may decline to exercise supplemental jurisdiction . . . if[:]"

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The third provision applies to this case.  The Court has dismissed the claims on which it had original jurisdiction -- the § 1983 claims.  The remaining claims sound in state law.

The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it.  In United Mine Workers of America v. Gibbs, 383 U.S. 715 (1966), decided more than twenty years before Congress passed 28 U.S.C. § 1367, the Supreme Court addressed the

-12-

federal district courts' ability to exercise jurisdiction over state law claims. In explaining that such power existed, the Supreme Court noted that it "need not be exercised in every case in which it is found to exist." Id. at 726. The Supreme Court continued:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

Id. (footnotes omitted). See Bd. of County Comm'rs v. Geringer, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002)("[T]he district court's ruling [in which it declined to review the state law claims] comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial . . . .").

Although there are similar elements between the federal law and New Mexico law, there are also important differences. Because the Court, by resolving the federal claim, need not address all state law elements, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. The state court is the more appropriate forum to resolve whether the County's and the City's actions constituted torts under New Mexico law.

**IT IS ORDERED** that Defendants Bernalillo County and the City of Albuquerque's Motion for Summary Judgment is granted on Plaintiff Sandra Felix' § 1983 claims against Bernalillo County and the City of Albuquerque, and the Court will dismiss all federal claims against Bernalillo County and the City of Albuquerque with prejudice. The Court will dismiss without prejudice all remaining claims against Bernalillo County and the City of Albuquerque -- all of which sound in state law.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Augustine M. Rodriguez, Jr.
Albuquerque, New Mexico

    *Attorney for the Plaintiff*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Bernalillo County Sheriff's Department*

Jeffrey L. Baker
Baker Law Firm
Albuquerque, New Mexico

*- and -*

William D. Slease
Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant Bernalillo County*

Deborah D. Wells
Kennedy, Moulton & Wells, P.C.
Albuquerque, New Mexico

    *Attorneys for Defendant Correctional Medical Services, Inc.*

Jeffrey L. Baker
Albuquerque, New Mexico

    *Attorney for the City of Albuquerque*